**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Bultemeyer, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Systems & Services Technologies, Inc.,<br><br>Defendant. | No. CV12-0998-PHX-DGC<br><br>**ORDER** |

Plaintiff filed a class action suit under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, alleging that Defendant Systems & Services Technologies, Inc. ("SST"), a debt-servicer for Argossy University ("AU"), violated a number of provisions of the FDCPA when it contacted Plaintiff and other similarly situated individuals regarding their debts owed to AU. Doc. 1. Defendant SST concurrently filed a motion to stay and compel arbitration (Doc. 11) and a motion to strike the class allegations. Doc. 12. The motions have been fully briefed. Docs. 16, 17. For reasons stated below, the Court will deny both motions.

**I.    Background.**

Plaintiff signed an enrollment agreement with AU in which she agreed to pay tuition and fees to AU as they came due. Doc. 11 at 5; *see* Doc. 11-1 at 3-6. The enrollment agreement contained an arbitration provision which stated that "any dispute or claim between you and AU (or any company affiliated with AU or any of its officers, directors, trustees employees or agents) arising out of or relating to this enrollment

agreement . . . shall be . . . submitted to and resolved by individual and binding arbitration pursuant to the terms described herein." Doc. 11 at 6; Doc. 11-1 at 5.

Plaintiff alleges that AU assigned her alleged debt to SST for collection, and SST left her numerous voice mail messages and written communications in connection with this debt. Doc. 1, ¶¶ 12-14; 38-87. Plaintiff alleges that SST's written correspondence and voice mail messages are substantially similar to those sent to an unknown number of other alleged AU debtors. *Id.*, ¶¶ 86-87. Plaintiff alleges that these communications violated the FDCPA in four ways: (1) SST violated 15 U.S.C. § 1692d(6) because its callers failed to meaningfully disclose their identities (Doc. 1, ¶¶ 107-12); (2) SST violated Section 1692e(11) because its callers failed to disclose that the calls were from a debt collector (*id.*, ¶¶ 113-16); (3) SST violated Section 1692e(10) because it used "false representations and deceptive practices" (*id.*, ¶¶ 117-24); and SST violated Section 1692e(14) because it falsely used a business or organization name other than the true name of its business (*id.*, ¶¶ 125-128).

SST asks the Court to stay this action and compel arbitration on the grounds that Plaintiff's FDCPA claims are within the scope of a valid arbitration agreement between Plaintiff and AU. Doc. 11. SST also moves to strike Plaintiff's class allegations on the grounds that Plaintiff waived the right to maintain a class action under the arbitration agreement. Doc. 12.

**II.    Legal Standard.**

The FAA broadly provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable" except upon grounds that exist at common law for the revocation of a contract. 9 U.S.C. § 2. Absent a valid contract defense, the FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985))

(emphasis in original). The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

**III.    SST's Motion to Stay and Compel Arbitration.**

    **A.    Agreement to Arbitrate.**

Plaintiff does not deny that she signed AU's enrollment agreement which contained the agreement to arbitrate, but she argues that this does not obligate her to arbitrate her claims against SST, a nonsignatory to that agreement. Doc. 16 at 3-10. Plaintiff also argues that the Court should deny SST's motions because the arbitration agreement is substantively and procedurally unconscionable. *Id.* at 10-11.

In support of her assertion that the arbitration agreement is substantively and procedurally unconscionable, Plaintiff cites to the terms of the enrollment agreement that say "Your acceptance as a student at Argosy University is conditioned upon your agreement to be bound by the terms of the Arbitration Agreement." Doc. 11-1 at 6. Plaintiff argues that this shows that the agreement was an "adhesion contract" because she had no choice but to sign it if she wished to enroll. *Id.* at 11.

In *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, the Arizona Supreme Court recognized an adhesion contract as one that is offered on a "take it or leave it basis" where the consumer "has no realistic choice as to its terms." 840 P.2d 1013, 1016 (Ariz. 1992) (quoting *Wheeler v. St. Joseph Hosp.,* 63 Cal. App.3d 345, 356, 133 Cal. Rptr. 775, 783 (1976)). The Arizona Supreme Court made clear, however, that adhesion alone is not sufficient to invalidate a contract provision. *Id.* The court looked additionally to whether the challenged provision violated the adhering party's reasonable expectations and whether it was "unduly oppressive" or "unconscionable" to that party. *Broemmer*, 840 P.2d at 1016 (quoting *Graham v. Scissor-Tail, Inc.,* 28 Cal.3d 807, 171 Cal. Rptr. 604, 611-12, 623 P.2d 165, 172-73 (1981)).

Plaintiff has not shown that the arbitration provision violated her reasonable expectations or that any of its terms are unduly oppressive. Plaintiff's conclusory

assertion that the arbitration provision is "unconscionable" simply because it was offered on a "take it or leave it" basis, without any discussion of how its terms are disadvantageous to her, does not support invalidating the agreement. *See Kingsley Capital Management, LLC v. Sly*, 820 F.Supp.2d 1011, 1021 (D. Ariz. 2011) (finding that a plaintiff's "vague and conclusory [assertions of increased expense] do not support invalidating the arbitration clause"); *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 90-92 (2000) (finding a plaintiff's unsupported assertions that she would not be able to vindicate her rights in arbitration because of prohibitive costs "too speculative to justify the invalidation of an arbitration agreement.").

The remaining question is whether the arbitration agreement obligates Plaintiff to arbitrate its claims against nonsignatory SST. SST argues on the basis of *Kingsley* that "those who have not signed a contract containing an arbitration clause may sometimes benefit from it through doctrines such as assumption, agency, veil-piercing/alter ego, and estoppel." Doc. 11 at 13 (quoting *Kingsley*, 820 F.Supp.2d at 1018) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir.2009); *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)). In addition, SST cites Ninth Circuit authority stating that "nonsignatories can enforce arbitration agreements as third party beneficiaries." *Id.* (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)). SST argues that equitable estoppel, agency, and third-party beneficiary status all support SST's right to compel arbitration in this case. *Id.* at 13-19.

      **1. Equitable Estoppel.**

Equitable estoppel applies when a party claiming the benefits of a contract simultaneously seeks to avoid the burdens of that contract. *See Mundi*, 555 F.3d at 1045-46; *Kingsley*, 820 F.Supp.2d at 1023. The Ninth Circuit in *Mundi* recognized two lines of cases applying equitable estoppel in the arbitration context: (1) those in which a nonsignatory may be held to an arbitration agreement where that party "knowingly exploits" or takes advantage of that agreement despite not having signed it, and (2) those in which a signatory may be required to arbitrate with a nonsignatory because of a close

1 relationship between the parties involved and "'the fact that the claims [a]re intertwined
2 with the underlying contractual obligations.'" *Id.* at 1046 (quoting *E.I. DuPont de*
3 *Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,* 269 F.3d 187, 199 (3d
4 Cir.2001)). *Mundi* stated that "in light of the general principle that only those who have
5 agreed to arbitrate are obliged to do so, we see no basis for extending the concept of
6 equitable estoppel of third parties in an arbitration context beyond the very narrow
7 confines delineated in these two lines of cases." *Id.*

8 As here, *Mundi* dealt with a nonsignatory defendant's motion to compel
9 arbitration. *Id.* at 1044. *Mundi* looked for guidance to *Sokol Holdings, Inc. v. BMB*
10 *Munai, Inc.*, 542 F.3d 354, 361 (2d Cir.2008), in which the Second Circuit "examined
11 cases in which a nonsignatory was allowed to compel a signatory to arbitrate based on
12 estoppel and reasoned that it was 'essential in all of these cases that the subject matter of
13 the dispute was intertwined with the contract providing for arbitration.'" *Id.* (quoting
14 *Sokol*, 542 F.3d at 361).

15 *Mundi* held that a plaintiff whose husband signed an arbitration agreement with
16 Wells Fargo Bank as part of a contract for a home equity line of credit could not be
17 compelled to arbitrate her claims against her husband's credit insurer for its refusal to pay
18 off the line of credit after her husband's death. *Id.* at 1045, 1047. Even though payments
19 for the credit insurance were added into the deceased's monthly payments to Wells Fargo
20 and Wells Fargo was the beneficiary of the insurance contract, resolution of the plaintiff's
21 failure-to-pay claims against the insurer did not require an examination of the terms of
22 the underlying credit contract, and the plaintiff had not alleged collusion or misconduct
23 on the part of Wells Fargo. *Id.* at 1047.

24 *Mundi* discussed two other cases that provide guidance on when equitable estoppel
25 applies to compel a signatory to an arbitration agreement to arbitrate his or her claims
26 against a nonsignatory. *Id.* at 1046. In *American Bankers Insurance Group, Inc. v. Long,*
27 453 F.3d 623, 630 (4th Cir.2006), the Fourth Circuit found that the plaintiffs who had
28 signed a contract containing an arbitration clause could be compelled to arbitrate their

claims against a nonsignatory where all of the claims depended on the terms of a promissory note that had been attached to and incorporated by reference into the contract. Conversely, in *Brantley v. Republic Mortgage Insurance Co.,* 424 F.3d 392 (4th Cir.2005), the Fourth Circuit found that equitable estoppel did not apply to compel a plaintiff to arbitrate her Fair Credit Reporting Act claims against her mortgage insurance company where the plaintiff was party to an arbitration clause in her mortgage contract. The court found that "the plaintiffs' claim was 'wholly separate from any action or remedy for breach of the underlying mortgage contract that is governed by the arbitration agreement.'" *Mundi*, 555 F.3d at 1047 (quoting *Brantley*, 424 F.3d at 396). The court also found no allegations of collusion or misconduct on the part of the mortgage lender with whom the plaintiff had made the arbitration agreement. *Id.*

SST argues that equitable estoppel applies in this case because Plaintiff will have to rely on the enrollment contract containing the arbitration agreement with AU to demonstrate that she was in default of her payment duties in order to prove that SST was acting as a debt collector subject to the FDCPA. Doc. 11 at 14. SST also argues that Plaintiff alleges "substantially interdependent" misconduct by AU and SST, that Plaintiff cannot make her claims against SST without showing how it and AU communicated with students who owed money to AU, and that apart from the conduct of AU in originating the debt, Plaintiff would not have any claims against SST. *Id.* at 14-15.

SST's arguments are unpersuasive. Like *Mundi* and *Bentley*, in which the plaintiffs' claims against their mortgage insurers would not have existed but for the underlying mortgage contracts, Plaintiffs claims against SST would not exist but for her underlying enrollment agreement with AU. As in those cases, however, this is not a sufficient link to show that "the subject matter of the dispute [i]s intertwined with the contract providing for arbitration." *Sokol*, 542 F.3d at 361; *See Kinglsely*, 820 F.Supp.2d at 1025 (finding a similar "but for" argument insufficient to compel arbitration).

It is true, as SST argues, that Plaintiff's claims under the FDCPA depend in part on a showing that SST's actions occurred after Plaintiff's default. But this does not mean

that resolution of Plaintiff's claims against SST depends on the terms of Plaintiff's agreement with AU. Even if evidence of Plaintiff's alleged default is a required element of her claims, the substance of Plaintiff's claims against SST depends entirely on SST's alleged violations of the FDCPA, not on the enrollment agreement. Like the plaintiff's claims against her mortgage insurer under the Fair Credit Reporting Act in *Bentley*, Plaintiff's FDCPA claims are "wholly separate from any action or remedy for breach of the underlying . . . contract that is governed by the arbitration agreement." 424 F.3d at 396.

SST's assertion of "substantially interrelated" conduct is also without merit. Plaintiff's complaint alleges that AU assigned Plaintiff's debt to SST for collection (Doc. 1, ¶ 14), but the complaint goes on to allege that SST employees are not monitored, supervised, disciplined, or trained as AU employees, and that "[SST] is independently involved in all aspects of the collection process regarding [SST's] collection of Argossy University accounts." *Id.*, ¶¶ 15-25; 27.

SST cites to *Johnston v. Arrow Financial Services, LLC*, No. 06 C 0013, 2006 WL 2710663 at *5 (N.D. Ill. Sept. 15, 2006), in which the plaintiffs argued that they only asserted claims against the defendant debt-collection service and not their lender, Capital One. The court in *Johnston* found that "despite [these] protestations . . ., plaintiffs do in fact allege interdependent and concerted misconduct by defendant and Capital One." *Id.* But in *Johnston*, the plaintiffs alleged in their complaint that the defendant and Capital One acted together when they sent letters on Capital One letterhead and that the defendant "was complicit in the sending of those letters by allowing Capital One to use defendant's phone number and contact information." *Id.* Here, Plaintiff alleges that SST used AU letterhead and claimed to be calling from AU when communicating with Plaintiffs and others about their AU accounts (Doc. 1, ¶¶ 36, 38 *passim*), but Plaintiff makes no allegations that AU was complicit with these actions. Rather, Plaintiff alleges that SST maintains sole control over the letters and collection procedures and handles all correspondence independently from AU's supervision or control. *Id.*, ¶¶ 23-33.

SST provides, without any analysis, a string of citations to cases in which courts have compelled a signatory to an arbitration agreement to arbitrate its claims against a nonsignatory. Doc. 17 at 7-8. These cases are inapposite. The Court briefly discusses them below as further evidence that equitable estoppel does not apply in this case.

In *Lucas v. Hertz Corp.*, No. C 11–01581, 2012 WL 2367617 (N.D. Cal. June 21, 2012), the court found that nonsignatory Hertz Rental Car could compel arbitration of the plaintiff's claims against it on the basis of an arbitration clause contained in a car-rental contract between the plaintiff and Hertz's licensee, Costa-Rica Rental Car. 2012 WL 2367617, at *7. But this was because the court found that the plaintiff received benefits from Hertz under the car rental contract, and all of the plaintiff's claims against Hertz rested on the terms of that contract. *Id.*

*Sourcing Unlimited, Inc. v. Asimco Intern., Inc.*, 526 F.3d 38, 48 (1st Cir. 2008), similarly concluded that all of the plaintiff's claims against a nonsignatory "ultimately derive from benefits it alleges are due it under the partnership Agreement" and were therefore subject to that agreement's arbitration clause. SST, by contrast, does not argue that Plaintiff received any benefit from SST as a result of her enrollment agreement with AU. Nor do Plaintiff's claims against SST rest on the terms of her enrollment agreement with AU.

*American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir.2006), as discussed above, involved the incorporation of the note that was the basis for the signatory's claims into the contract containing the arbitration provision. No such incorporation of the FDCPA or any other provisions imposing obligations on SST are present in this case.

The remaining cases, *Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F.Supp.2d 1033 (N.D. Cal. 2012); *PRM Energy Systems, Inc. v. Primenergy, L.L.C.,* 592 F.3d 830 (8th Cir. 2010); *Griffin v. ABN Amro Mortg. Group Inc.*, 378 Fed. Appx. 437,2010 WL 1976575 (5th Cir. 2010); and *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010), all rely on allegations of interdependent and concerted misconduct of

1  a nonsignatory and a signatory. As discussed above, no such allegations are present in
2  this case. SST's equitable estoppel argument fails.

### 2. Agency Relationship.

"[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer*, 436 F.3d at 1101 (quoting *Letizia v. Prudential Bache Securities*, 802 F.2d 1185, 1187–88 (9th Cir.1986)) (internal quotation marks omitted). Agency theory applies "when a signatory has brought claims against nonsignatory agents and the agents then seek to invoke the arbitration clause against the signatory." *Legacy Wireless Servs. v. Human Capital, LLC*, 314 F.Supp.2d 1045, 1054 (D. Or. 2004)) (quoted in *Petersen v. EMC Telecom Corp.*, No. CV-09-2552, 2010 WL 2490002, at *4 (D. Ariz. June 16, 2010)) (emphasis deleted). "Independent contractors do not fall within the exception that non-signatory agents may be bound by an arbitration agreement." *Swift v. Zynga Game Network, Inc*, 805 F.Supp.2d 904, 916 (N.D. Cal. 2011).

Agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (First) of Agency § 1 (1933). "[T]here is not necessarily an agency relationship because the parties to a transaction say that there is, or contract that the relationship shall exist, or believe it does exist. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." *Id.* at § 1 cmt. b (quoted in *Valley Nat. Bank of Phoenix v. Milmoe*, 248 P.2d 740, 743 (Ariz. 1952)).

SST argues that it acted as AU's agent pursuant to an agreement that AU entered with its sister company, NCO Financial Systems, Inc., in which SST was designated to act as AU's payment processor and given responsibility to perform some of NCO's servicing duties. Doc. 11 at 17; *See* Decl. of Gregory R. Steven, Doc. 11-1, ¶¶ 5-7. SST argues that Plaintiff's arbitration agreement with AU expressly pertains to claims against AU "and . . . its agents" and that this permits SST to invoke arbitration. *Id.* Plaintiff

argues that no agency relationship exists because AU contracted with NCO, not SST, and SST presents no evidence that it was subject to AU's control or consented to act on its behalf. Doc. 16 at 8.

SST has failed to demonstrate that it entered into an agency relationship with AU or to rebut Plaintiff's allegations, discussed above, that SST operated independently from and outside of the supervision and control of AU. SST argues on the basis of *Browne v. Nowlin*, 570 P.2d 1246, 1248 (Ariz. 1977), that Plaintiff's allegations that it contacted Plaintiff, purporting to be AU, and sought to collect payments on AU's behalf are sufficient under Arizona law to show implied agency. Doc. 17 at 9. But *Browne* dealt with whether a lender could deny that a title company that accepted payments on its behalf acted as its agent after the lender ratified the title company's actions. 570 P.2d at 1248. Holding a principal accountable for actions it ratified is not the same as bringing an implied agent within the scope of the principal's arbitration agreement. SST has presented no evidence that it entered into an agency relationship with AU, that AU ratified its actions, or that AU exercised supervision or control over its debt collection practices. The Court accordingly cannot conclude that SST is entitled to invoke AU's arbitration clause on an agency theory.

### 3. Third Party Beneficiary.

Nonsignatories can enforce arbitration agreements as third party beneficiaries. *Comer*, 436 F.3d 1098, 1101 (9th Cir.2006) (citing *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001)). This "requires a showing that the *parties to the contract* intended to benefit a third party." *Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993) (emphasis in original); *see also Nahom v. Blue Cross and Blue Shield of Arizona, Inc.*, 885 P.2d 1113, 1117-18 (Ariz. Ct. App. 1994) ("an intention to benefit [the third party] must be indicated in the contract itself . . . . The contemplated benefit must be both intentional and direct . . . , and 'it must definitely appear that the parties intend to recognize the third party as the primary party in interest'") (internal citations omitted).

1    SST's argument that it is entitled to invoke the arbitration provision as a third party beneficiary is not persuasive. There is no evidence in the contract that it was intended for SST's benefit. The contract makes no mention of benefits intended for SST or for any class of AU affiliates to which SST may claim to be a part. Whatever benefit SST may derive from its role in servicing student debt is at most a byproduct of the contract, not its intended purpose. "'[I]t is not enough that some benefit incidental to the performance of the contract may accrue to [the third party].'" *Lester v. Basner*, 676 F. Supp. 481, 484 (S.D.N.Y. 1987) (quoting *Vazman v. Fidelity Int'l Bank*, 418 F. Supp. 1084, 1086 (S.D.N.Y.1976)). SST is not entitled to compel arbitration on these grounds.

### B.    Whether the Agreement Encompasses Plaintiff's Claims.

Having found that Plaintiff did not have an agreement to arbitrate with SST, and that none of SST's alternative theories for compelling arbitration apply, the Court cannot conclude that Plaintiff's FDCPA claims fall within the scope of her arbitration agreement with AU. The Court will deny SST's motion to stay and compel arbitration.

### IV.    SST's Motion to Strike Class Allegations.

SST's motion to strike class allegations is based solely on its argument that Plaintiff is bound by the waiver of class action contained in her arbitration agreement with AU. Doc. 12 at 4-5. Having found that Plaintiff is not bound by the arbitration agreement as to her FDCPA claims against SST, the Court will deny SST's motion to strike class allegations.

**IT IS ORDERED:**

1. Defendant Systems & Services Technologies, Inc.'s motion to stay and compel arbitration (Doc. 11) is **denied**.

2. Defendant Systems & Services Technologies, Inc.'s motion to strike class allegations (Doc. 12) is **denied**.

Dated this 26th day of September, 2012.

_David G. Campbell_
David G. Campbell
United States District Judge